J-S48007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD RIVAS | : | |
| | : | |
| Appellant | : | No. 2541 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 11, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0003315-2013,
CP-51-CR-0003315-2013.

BEFORE:  KUNSELMAN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:                    Filed: January 21, 2021

Richard Rivas appeals from the judgment of sentence imposed after the trial court found him guilty of possession of a controlled substance, possession with intent to deliver, and conspiracy.[1]  He challenges the sufficiency of the evidence for each of these convictions.  Upon review, we affirm.

The trial court set forth the pertinent facts as follows:

At around 9:00 am on November 10, 2012, officers from the narcotics unit of the 25th police district established a plainclothes undercover narcotics investigation near the 100 block of West Somerset Street in the City and County of Philadelphia.  Officers from the narcotics unit observed a Hispanic male, identified as "Casillas," hand a square-shaped object to another Hispanic male, identified as Montero, who placed it behind a set of steps on the

_____

[1] 35 P.S. § 780-113(a)(30) and § 780-113(a)(16)) and 18 Pa.C.S.A. § 903.

eastside of the 2800 block of Hope Street. Officers then observed Montero engage in a suspected hand-to-hand drug transaction with a male identified as "Dowell." Backup officers stopped Dowell and recovered suspected heroin, labelled "Bugsy," from his person. After the suspected narcotics transaction with Dowell, officers heard Casillas communicate something to the effect of "being out." At approximately 9:25 am on November 10, 2012, a female identified as Nicole Weer approached the block and engaged in conversation with Casillas and appeared to wait on the street. A short time later, [Rivas] appeared and, while walking down the street, tossed a black bag towards the feet of Casillas from which fell two square shaped objects upon hitting the ground. Mr. Casillas picked up the two items and handed the square shaped object to another defendant, Mr. Montero. Montero then proceeded to where Ms. Weer was waiting on the block, at which point she exchanged United States currency for the square shaped object that Montero handed to her. After observing another similar transaction, officers moved onto the block to make arrests of [Rivas], Casillas, Montero and others. Officers then searched the area near the stairs where the suspects were observed placing square shaped objects and retrieving such objects before engaging in transactions for United States currency. Officers recovered 282 Ziploc packets, each marked Bugsy, from the black bag officers had earlier seen. [Rivas] was then placed under arrest.

Trial Court Opinion, 1/8/20, at 1-2 (citations omitted).

Following a bench trial, the court found Rivas guilty of possession with intent to deliver, possession of a controlled substance, and conspiracy. Rivas was sentenced to an aggregate sentence of five (5) to ten (10) years of imprisonment. Rivas filed a post-sentence motion, which was denied by operation of law. Rivas' subsequent appeal to this Court was quashed as untimely. Following the denial of his petition under the Post-Conviction Relief Act, and a successful appeal to this Court, Rivas' appellate rights were reinstated *nunc pro tunc*.

Rivas timely appealed. The trial court and Rivas complied with Pa.R.A.P. 1925.

Rivas raises a single issue on appeal:

I. Is [Rivas] entitled to an arrest of judgment on the charges of Possession with intent to deliver (PWID); Possession of CDS; and conspiracy to PWID, where the verdict was not supported by sufficient evidence?

Rivas' Brief at 3.

Rivas challenges the sufficiency of the evidence to support his convictions claiming that they were based merely on speculation, conjecture and surmise. First, Rivas argues that the evidence was insufficient to show that he possessed any drugs, let alone did so with the intent to distribute them. Specifically, he claims that, at the time of arrest, Rivas did not actually or constructively possess any controlled substances; there were many individuals at the scene who equally had access to the drugs. Rivas' Brief at 10.

Additionally, Rivas argues that there was insufficient evidence to support his conviction for conspiracy. Specifically, he claims the evidence did not establish any direct or implied agreement between him and his co-defendants, Montero and Casillas, or that they shared the criminal intent to deliver drugs; his mere presence at the scene was not enough. *Id.* at 9.

In reviewing a claim based upon the sufficiency of the evidence, this Court:

must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted). "The trier of fact – while passing on the credibility of witnesses and the weight of the evidence – is free to believe all, part, or none of the evidence. "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013).

35. P.S. § 780-113(a)(16) prohibits:

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act… unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113. Possession of a controlled substance can be found by "proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 26 (Pa. Super. 2018), *appeal denied*, 202 A.3d 42 (Pa. 2019) (citation omitted). Where contraband is not found on a defendant's person, "the Commonwealth is required to establish that the defendant had constructive possession of the seized items to support his convictions." *See Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012).

To sustain a conviction for PWID, the Commonwealth must prove: 1) the possession of the controlled substance; and 2) the intent to deliver the controlled substance. **See**, **e.g.**, **Commonwealth v. Lee**, 956 A.2d 1024, 1028 (Pa. Super. 2008); **see also** 35 P.S. 780-113(a)(30). "In determining whether there is sufficient evidence to support a PWID conviction, all facts and circumstances surrounding the possession are relevant, and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence." **Commonwealth v. Bricker**, 882 A.2d 1008, 1015 (Pa. Super. 2005). The intent to deliver can be inferred from the surrounding facts and circumstances. **Commonwealth v. Kirkland**, 831 A.2d 607, 611 (Pa. Super. 2003), *appeal denied*, 847 A.2d 1280 (2004). "Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." **Id.**

To sustain a conviction for conspiracy, the Commonwealth must prove three elements: 1) an agreement; 2) shared criminal intent; and 3) an overt act. **See Commonwealth v. Murphy**, 795 A.2d 1025, 1037–38 (Pa. Super. 2002). Moreover, the conspiratorial agreement and shared criminal intent may be proven by circumstantial evidence. We have stated:

> An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal

confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

*Id.* at 1038 (quoting ***Commonwealth v. Johnson***, 719 A.2d 778, 784–85 (Pa. Super. 1998) (*en banc*)), *appeal denied*, 739 A.2d 1056 (1999) (citations and internal quotations omitted).

In finding Rivas guilty, the trial court summarized the relevant evidence in support of Rivas' convictions as follows:

Here, after Mr. Casillas and Mr. Montero ran out of heroin, Officer DeLaurentis observed Mr. Casillas make a phone call. Within two to three minutes of that call, [Rivas] approached Mr. Casillas and tossed to him the black bag which, after falling onto the ground, emptied two square-shaped objects onto the ground. Mr. Casillas took the black bag and placed it near a fence line. No other persons were observed approaching or handling the black bag. Thus, the heroin later found in the black bag could have come only from [Rivas]. After [Rivas] gave the bag to Mr. Casillas, more transactions were observed and each subsequent buyer was found to possess the same "Bugsy" stamped bags of heroin. Further, when the Ford F-150 was searched after [Rivas'] arrest it was found to contain $1,184 . . . broken down in small denominations consistent with the sales of drugs: 43 twenty dollar bills, 25 ten dollar bills, 12 five dollar bills and 14 one dollar bills.

Trial Court Opinion, 1/8/20, at 6-7. This evidence was primarily based upon the testimony of Officer DeLaurentis, who conducted the undercover surveillance that morning. He is an experienced narcotics investigator who has conducted surveillance many times in this particular area known to be a heavy narcotics area.

Officer DeLaurentis testified that he observed Rivas carrying the duffel bag which had the heroin packets in it. No persons other than Casillas approached the black bag Rivas brought. Although no drugs were found on Rivas when he was arrested, this evidence was sufficient to demonstrate that Rivas had been in actual possession of the heroin.[2]

Officer DeLaurentis further testified that he observed Rivas toss the bag with heroin to Casillas. Casillas, after a brief conversation with Rivas, gave Rivas money. Rivas took the money back to his truck. Later, when he was arrested, the police found $140 on Rivas and almost $1200 underneath the driver's floor mat. Additionally, the heroin found in the black bag delivered by Rivas was individually packaged and stamped with "Bugsy." Such packets of heroin were found on individuals who Officer DeLaurentis observed buying from Montero and Casillas.

Even though Rivas did not engage in the hand-to-hand transactions, he delivered the heroin to Casillas, and received money for it. Packets of that same heroin were then sold to others. This evidence was sufficient to demonstrate that Rivas possessed the heroin with the intent to deliver it.

_____

[2] As noted above, generally where the contraband is not found on the defendant, as was the case here, the Commonwealth must show that the defendant constructively possessed the controlled substance. However, where there is successful proof of a conspiracy, which we discuss below, the Commonwealth need not show constructive possession. **See Commonwealth v. Perez**, 931 A.2d 703, 709 (Pa. Super. 2007).

The evidence also was sufficient to demonstrate that Rivas engaged in a conspiracy to deliver the heroin with Casillas and Montero. It was reasonable for the trial court to infer that Casillas called Rivas after Montero announced they were out given that Rivas showed up shortly thereafter with the black bag of heroin. Rivas was not merely present at the scene; he played a key role in the conspiracy by supplying and delivering the heroin, packaged for individual sale, to Casillas and Montero to sell to various individuals. Thus, contrary to Rivas' claim, this evidence was sufficient to establish the elements of an agreement and shared criminal intent required to prove the existence of a conspiracy. As such, Rivas, as a co-conspirator, is fully liable for all of the drugs recovered. *Perez*, 931 A.2d at 709.

In sum, based upon our review of the record and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence was sufficient for the trial court to find Rivas guilty of all three offenses.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/21

- 8 -